```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Old Republic National Title
Insurance Co.

    v.                                    Civil No. 10-cv-447-JD
                                            Opinion No. 2011 DNH 120

John A. Boender, et al.

## O R D E R

Old Republic National Title Insurance Company ("Old Republic") sued John A. Boender, Stephen O. Simons, and S.O. Simons, Inc., ("Boender and Simons") seeking a declaratory judgment that Old Republic has no liability to the defendants for alleged damages or loss in connection with five title insurance claims. Financial Resources Mortgage, Inc. ("FRM") and C L and M, Inc. ("CLM"), which brokered and serviced the mortgages, respectively, were placed in involuntary Chapter 7 bankruptcy on November 20, 2009. The Trustee for FRM and CLM's bankruptcy estates, Steven M. Notinger, now moves, pursuant to Federal Rule of Civil Procedure 24, to intervene in order to stay this case. In the alternative, the Trustee seeks to withdraw this case to the bankruptcy court.[1] Old Republic opposes the motion.

---

[1] Although the Trustee cites 28 U.S.C. § 158(d) in support of his motion to withdraw, (doc. 14, p. 1), 28 U.S.C. § 157(d)

On June 13, 2011, the court issued a procedural order directing the parties to address seven questions in supplemental briefs. The Trustee filed his supplemental brief in accordance with that order on June 30, 2011. Old Republic filed its response on July 15, 2011.

## Background

The district court must accept as true all non-conclusory allegations made in support of an intervention motion. See B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006). Therefore, the court derives the relevant facts for the purpose of deciding this motion from the allegations and evidence submitted by the Trustee in support of his motion and from uncontroverted facts established elsewhere in the record. See id.

From approximately June of 2005 to November of 2009, FRM and CLM raised at least $84 million from investors, including Boender and Simons, purportedly to extend real estate loans to developers. For some transactions, FRM and CLM organized investor-financed trusts to lend the money to the developers. For each trust transaction, FRM and CLM drafted loan documents

---

appears to be the more pertinent statute.

indicating that the trust held a mortgage in the borrower's property.  For other transactions, FRM and CLM represented to investors that they held mortgages on the borrowers' property directly and drafted loan documents purporting to establish the mortgages.  Boender and Simons provided construction loans for projects in the FRM and CLM scheme, including the five loans that are the subject of this case.  Boender and Simons claim that they hold title insurance policies through Old Republic that cover the mortgages they received as security for their loans.

In November of 2009, FRM and CLM were placed into involuntary Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of New Hampshire in two cases, Docket Nos. 09-14565 and 09-14566, that are being jointly administered.  In December of 2009, the Trustee filed an adversary proceeding in the bankruptcy court, ("Main Adversary Proceeding") in which he alleged that FRM and CLM had perpetuated a giant Ponzi scheme. The Trustee alleged that FRM and CLM did not earmark investors' money for particular loans, as it represented in loan documents, but rather deposited investors' checks into CLM's general accounts.  He alleged that CLM's officers stole at least $20 million from CLM and used commingled funds to finance loans as they came due and to make interest payments to investors.

The Trustee sought a preliminary injunction, pursuant to 11 U.S.C. § 105, enjoining all holders of loans and mortgages that were financed or organized by FRM or CLM from litigating their claims, foreclosing on or transferring the property, or attempting to collect on their debts. The bankruptcy court granted the preliminary injunction on December 22, 2009. The bankruptcy court has since granted several motions extending the injunction, most recently on June 21, 2011. The injunction is currently in effect until September 22, 2011.

On March 31, 2010, the Trustee filed an amended complaint in the Main Adversary Proceeding. In it, he sought, <u>inter alia</u>, a declaratory judgment from the bankruptcy court that all of the loans, loan documentation, and mortgages that FRM and CLM had arranged were property of the jointly-administered bankruptcy estates.

Boender and Simons are among the defendant lenders in the Main Adversary Proceeding. Soon after the Trustee filed his complaint, Boender and Simons submitted five insurance claims to Old Republic. They claimed that Old Republic had insured their loans and asked Old Republic to provide their defense in the Main Adversary Proceeding. Old Republic states that it provided Boender and Simons a limited defense in the Main Adversary Proceeding.

On April 14, 2010, the Trustee moved for the approval of a Settlement Agreement he had reached with Boender and Simons and two other lenders regarding some of the loans. The Settlement Agreement states that each lender shall:

> retain and be vested with sole ownership of all his Schedule A Loans, the real estate mortgages, the promissory notes, security agreements, guarantees, support obligations, claims, sole responsibility for future funding and prosecuting the claims, sole risk of loss, and sole control over settlement, litigation and appeals.

(Doc. 17, Ex. 1, p. 4). The Settlement Agreement appears to list the loans that are the bases of the five title insurance claims at issue in the case in this court as Schedule A Loans. (Doc. 17, Ex. 1, p. 7). The Settlement Agreement also states that Boender and Simons must pay the Trustee 25% of the net proceeds of any claims "against any attorney, law firm, title company, or title insurance company relating to the Schedule A Loans." (Doc. 17, Ex. 1, p. 2). In his April 14, 2010, motion for approval of the Settlement Agreement in bankruptcy court, the Trustee stated that "[a]s a result of the settlement the Boender Group will be allowed to pursue collection of the Loans and will no longer be subject to any injunction against collection of the Loans issued by the Court in [the Main Adversary Proceeding]." (Adv. Pro. No. 09-1184, Doc. 113, p. 3). The bankruptcy court approved the Settlement Agreement on May 4, 2010.

Old Republic retained Attorney John Ryan as counsel to represent Boender, Simons, and other claimants in FRM and CLM's joint bankruptcy cases. (Objection to Motion to Intervene, Doc. 17, p. 5). On July 26, 2010, Ryan filed a second Adversary Proceeding in bankruptcy court, on behalf of Boender, Simons, S.O. Simons, Inc., and two other investors ("Quiet Title Adversary Proceeding").[2] The Quiet Title Adversary Proceeding sought a declaratory judgment that certain mortgages involving a Chichester condominium complex were valid.[3]

Old Republic then filed an action in this court on October 1, 2010, seeking a declaratory judgment that it is not liable to Boender and Simons for any damages or losses associated with the five loans for which Boender and Simons had submitted claims. Old Republic contends that it never issued title insurance policies for the transactions that formed the bases for two of Boender and Simons's claims. It concedes that an agent acting on its behalf issued lender's title insurance policies in connection

---

[2] The named plaintiffs in the suit claim that Old Republic did not consult them before filing the Quiet Title Adversary Proceeding, and that they are really "Putative Plaintiffs" in the suit. (Adv. Pro. 10-01-086-JMD, Doc. 61, p. 4).

[3] In its objection to the Trustee's motion to intervene, Old Republic states that Ryan filed the Quiet Title Adversary Proceeding in bankruptcy court, and named the Trustee as a defendant in the proceeding, because the Trustee claimed ownership and control over some of the Chichester mortgages.

with the transactions that formed the bases for the remaining three claims but argues that Boender and Simons's alleged losses are not covered under the terms of those policies.

On March 1, 2011, the parties in the Quiet Title Adversary Proceeding, including the Trustee, moved to join Old Republic in that proceeding as a necessary party, pursuant to Federal Rule of Civil Procedure 19. They also filed counter- and cross-claims against Old Republic, seeking to recover damages sustained as the result of Old Republic's alleged failure to conduct title searches before insuring mortgages on units in the Chichester condominium complex.

Two days later, the Trustee filed a motion to intervene in and stay the case in this court or to withdraw it to the bankruptcy court. In his motion, the Trustee argues that the declaratory judgment action in this court raises the same issues as the Quiet Title Adversary Proceeding in bankruptcy court.

On July 11, 2011, the Trustee and other parties in the Quiet Title Adversary Proceeding moved to withdraw their March 1, 2011, motion for joinder and the counter- and cross-claims against Old Republic. The parties noted that, at a hearing on the motion, the bankruptcy court had questioned whether it had subject matter jurisdiction over the counter- and cross-claims. The parties stated that withdrawal of the motion for joinder and accompanying

claims would "allow the state court claims, which are the subject matter of this litigation[,] to be filed in a more appropriate forum." (Adv. Pro. No. 10-01086, Doc. 81, p. 2). The bankruptcy court granted the motion for withdrawal on July 12, 2011.

## Discussion

The Trustee moves to intervene pursuant to Federal Rule of Procedure 24, or, alternatively, to withdraw the present case to bankruptcy court. In his supplemental brief, the Trustee asserts that he seeks to intervene permissively under Rule 24(b) and not as a matter of right under Rule 24(a).[4] (Doc. 20, p. 11). In its response, Old Republic argues that the Trustee does not have standing to intervene because the Settlement Agreement divested the Trustee of any direct interest in the five title insurance claims at issue in this case. Old Republic also contends that the Trustee does not meet Rule 24(b)'s standard for permissive intervention.

Before the court can consider the Trustee's motion to intervene, it must address the Trustee's argument, first raised

---

[4]Because the Trustee has explicitly stated that he seeks to intervene permissively and not as of right, the court need not address the Trustee's apparent suggestion, in footnote 6 of his supplemental brief, that he has also satisfied Rule 24(a)'s standard for intervention as of right. (Doc 20, p. 13).

in a section of the Trustee's supplemental brief entitled "Trustee's Preliminary Statement," that the court lacks subject matter jurisdiction over Old Republic's declaratory judgment action.  If the court finds that subject matter jurisdiction is appropriate, it must consider the Trustee's argument that the five claims that form the basis for Old Republic's declaratory judgment action are subject to the preliminary injunction in effect in the Main Adversary Proceeding.

A.    Trustee's Preliminary Statement

In its complaint, Old Republic asserts that the court has jurisdiction over its declaratory judgment action based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  On its face, the complaint appears to satisfy the requirements of § 1332.  It states that Old Republic is a Minnesota corporation, and its principal place of business is in Minnesota.  The defendant lenders Boender and Simons are Maryland residents, and S.O. Simons, Inc. is a Maryland corporation with its principal place of business in Maryland.  The amount in dispute is more than $75,000.  Although the Trustee argues in his preliminary statement that diversity is lacking, he fails to provide any facts in support of this contention.  Therefore, the court finds no defect in Old Republic's allegation of diversity jurisdiction.

The Trustee also argues that Old Republic lacks the capacity to bring suit in this court, because it does not have a certificate of authority to transact business in the state under New Hampshire R.S.A. § 293-A:15.01.  He contends that under R.S.A. § 293-A:15.02, Old Republic cannot maintain a proceeding in any court in New Hampshire until it obtains the certificate.  Even if § 293-A:15.02 applies to Old Republic, which Old Republic disputes, other courts have reasoned, persuasively, that similar statutes may provide an affirmative defense but do not raise a jurisdictional bar.  See, e.g., Bondpro Corp. v. Siemens Power Generation, Inc., 463 F.3d 702, 705 (7th Cir. 2006); Morgan Guaranty Trust Co. of New York v. Blum, 649 F.2d 342, 345 n. 3 (5th Cir. 1981); Summers v. Interstate Tractor and Equip. Co., 466 F.2d 42, 49-50 (9th Cir. 1972); RehabCare Group E., Inc. v. Camelot Terrace, Inc., No. 10-cv-02350, 2010 U.S. Dist. LEXIS 132581, at *4-5 (N.D. Ill. Dec. 15, 2010); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 384-85 (S.D.N.Y. 1998).  Therefore, even if R.S.A. § 293-A:15.02 applies to Old Republic, it would not raise a jurisdictional issue in this case.

To the extent that the Trustee argues that the doctrine of unclean hands applies, the doctrine is not a barrier to the court's jurisdiction.  See Donoghue v. IBC USA (Publications), Inc., 70 F.3d 206, 218 (1st Cir. 1995).

The issues the Trustee raises do not show that the court lacks subject matter jurisdiction.

B.  Preliminary Injunction

In his supplemental brief, the Trustee also asserts that the five insurance claims at issue in this case are property of FRM and CLM's jointly-administered bankruptcy estates and subject to the preliminary injunction in effect in the Main Adversary Proceeding.  (Doc. 20, p. 10).

The Trustee, however, does not explain the effect of the Settlement Agreement, which appears to grant ownership over the Schedule A loans to Boender, Simons, and two other investors. Moreover, the Trustee's assertion that the preliminary injunction extends to the five title insurance claims is contradicted by his own statement, in his April 14, 2010, motion seeking the bankruptcy court's approval of the Settlement Agreement.  In that statement, the Trustee asserted that, as the result of the Agreement,  Boender and Simons "will be allowed to pursue collection of the loans and will no longer be subject to any injunction against collections of the Loans issued by the Court in [the Main Adversary Proceeding]."  (Adv. Pro. No. 09-1184, Doc. 113, p. 3).

11

The Trustee has not shown that the five claims at issue in this case implicate property of FRM and CLM's bankruptcy estates or that Old Republic is enjoined from pursuing its declaratory judgment action in this court.

B.  <u>Standing</u>

Old Republic argues that the Trustee lacks standing under Article III of the Constitution to intervene in the declaratory judgment action. It argues that in the April, 2010, Settlement Agreement, the Trustee contractually conceded ownership of the five mortgages at issue in the present case and, therefore, lost the right to make a claim under any related title insurance policies. The Trustee states in his supplemental brief that he has standing to intervene because of his duty as trustee "to marshal [the] Estate's assets and liabilities . . . ." (Doc. 20, p. 7). In the alternative, he appears to argue that as an intervenor, he is not required to establish independent standing. (Doc. 20, p. 8).

The law is not clear as to whether a would-be intervenor must establish Article III standing in addition to meeting the requirements of Rule 24. The First Circuit has not decided the issue. <u>See</u> <u>Manqual v. Rotger-Sabat</u>, 317 F.3d 45, 61 (1st Cir. 2003)(observing that a circuit split exists as to whether

standing is required to intervene where the original parties are still pursuing the case, and declining to decide the question). The court need not delve into this thorny question, however, because the Trustee does not meet Rule 24(b)'s standard for permissive intervention.  Therefore, regardless of the standing issue, the Trustee cannot intervene in this case.

C.   Intervention

Rule 24 provides for mandatory intervention in particular circumstances, Rule 24(a), and permissive intervention at the discretion of the court, Rule 24(b).  The Trustee seeks permissive intervention.  (Doc. 20, p. 11).

As is pertinent here, the court may grant permissive intervention under Rule 24(b)(1), "when an applicant's claim or defense and the main action have a question of law or fact in common."  Daggett v. Commission on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).  Once the court has determined that the would-be intervenor has satisfied this threshold requirement, it "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion."  Id.

The Trustee argues that Old Republic's declaratory judgment action here involves the same "facts, parties, theories, claims

13

and causes of action" as the Quiet Title Adversary Proceeding in the bankruptcy cases.  (Doc. 14, p. 5).  He argues that if the present case is not stayed pending the outcome of the Quiet Title Adversary Proceeding, "it will effect [sic] the Bankruptcy Trustee's ability to collect and manage assets of the Bankruptcy Estate without it being present and without it having any opportunity to fully and fairly litigate its interests in the Federal Court."  (Doc. 14, p. 6).

The Trustee does not explain how a decision in this case would affect the Trustee's ability to manage FRM and CLM's bankruptcy estates.  He also fails to explain how the Quiet Title Adversary Proceeding shares common questions of law and fact with the present case, particularly now that the bankruptcy court has dismissed the counter- and cross-claims against Old Republic.  In contrast, Old Republic contends that the declaratory judgment action presents very different facts and circumstances from those of the Quiet Title Adversary Proceeding.  Old Republic claims that the Quiet Title Adversary Proceeding will require the court to determine the validity of the plaintiffs' mortgages, whereas the present case raises questions involving the interpretation of the defendant lenders' title insurance policy provisions.

The Trustee does not respond to Old Republic's argument but states that Old Republic could use a favorable decision in the

present case offensively to "cut off the Trustee and other Lenders from making claims on title policies issued by Old Republic." (Doc. 18, p. 2).  The Trustee does not explain how that would happen, nor does he cite any cases for the proposition that this concern, if valid, would meet Rule 24(b)'s threshold burden.

"[A] court need only accept as true 'the non-conclusory allegations made in support of an intervention motion.'" Costa v. Marotta, Gund, Budd. & Dzera, LLC, 281 Fed. Appx. 5, 9 (1st Cir. 2008)(quoting Fernandez, 440 F.3d at 543).  Because the Trustee has failed to show that the bankruptcy estates' interests share a common question of law or fact with the present action, the court denies his request for permissive intervention.

C.   Withdrawal

In the alternative, the Trustee seeks to "withdraw" the present case "pursuant to 28 U.S.C. § 158(d)."  (Doc. 14, p. 1).  Section 158 provides for appeals in bankruptcy court cases.  The Trustee likely intended to refer to 28 U.S.C. § 157(d), which authorizes the district court to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

Section 157(d) does not provide the relief the Trustee seeks.  Section 157(d) authorizes the federal district court to withdraw the reference of a case to bankruptcy court, with the result that the case returns to the district court for resolution.  Section 157(d) does not authorize the bankruptcy court to "withdraw" a case from the district court.

## Conclusion

For the foregoing reasons, Trustee Notinger's motion to intervene (doc. no. 14) is DENIED.

SO ORDERED.

                                              /s/ Joseph A. DiClerico, Jr.
                                              Joseph A. DiClerico, Jr.
                                              United States District Judge

July 28, 2011

cc:  Michael J. Lambert, Esquire
     Thomas M. Looney, Esquire
     Alec L. McEachern, Esquire
     Deborah Ann Notinger, Esquire
     Gregory T. Uliasz, Esquire